**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| PRAGMATUS AV, LLC, | ) | Civil Action No. 1:10-cv-1288 |
| | ) | (LMB/JFA) |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FACEBOOK, INC., YOUTUBE, LLC, | ) | |
| LINKEDIN CORPORATION, and | ) | |
| PHOTOBUCKET.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' JOINT MOTION TO TRANSFER VENUE**
**PURSUANT TO 28 U.S.C. § 1404(a)**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     SUMMARY OF ARGUMENT ........................................................................ 1

II.    FACTUAL BACKGROUND ........................................................................ 1

    A.     The Defendants Have No Connection to this District ........................... 2

    B.     The Plaintiff Lacks a Significant Connection to this District ................ 4

    C.     The Large Majority of Potential Non-Party Witnesses Reside in the
        Northern District of California, and None Reside in Virginia ............... 5

III.   ARGUMENT ............................................................................................... 5

    A.     Legal Standard ...................................................................................... 5

    B.     This Action Could Originally Have Been Brought in the Northern District
        of California ........................................................................................... 6

    C.     The Convenience Factors and Interests of Justice Overwhelmingly Favor
        Transfer ................................................................................................. 7

        1.     The Convenience of the Parties and Access to Sources of Proof ............. 8

        2.     The Availability of Compulsory Process and the Convenience of
            Non-Party Witnesses ....................................................................... 10

        3.     The Cost of Obtaining the Attendance of Witnesses ............................. 12

        4.     The Interest in Having Local Controversies Decided at Home .............. 13

        5.     The Court's Familiarity with the Applicable Law .................................. 13

        6.     The Interests of Justice ......................................................................... 13

    D.     Plaintiff's Choice of Forum Is Not Entitled To Substantial Weight ................... 15

IV.    CONCLUSION .......................................................................................... 17

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Board of Trustees v. Baylor Heating & Air Conditioning, Inc.*,
    702 F. Supp. 1253 (E.D. Va. 1988) .................................................................6, 15

*Collaboration Properties, Inc. v. Polycom, Inc.*,
    Case No. 02-cv-04591-MMC (N.D. Cal. filed Sept. 23, 2002)...............................14

*Collaboration Properties, Inc. v. Tandberg ASA*,
    Case No. 05-cv-01940-MHP (N.D. Cal. filed May 11, 2005)...............................14

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
    71 F. Supp. 2d 517 (E.D. Va. 1999) ................................................................16

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009).............................................................8, 10, 11

*In re Microsoft Corp.*,
    Misc. No. 944, slip op. (Fed. Cir. Jan. 5, 2011) (Ex. 14).................................6, 9

*In re T.S. Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)..................................................................8, 13

*Koh v. Microtek International, Inc.*,
    250 F. Supp. 2d 627 (E.D. Va. 2003) ................................................................16

*Lycos, Inc. v. TiVo, Inc.*,
    499 F. Supp. 2d 685 (E.D. Va. 2007) ..........................................................6, 7, 16

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*,
    230 F. Supp. 2d 655 (E.D. Pa. 2002) ................................................................16

*Samsung Electronics Co. v. Rambus, Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) ................................................................7

*U.S. Ship Management v. Maersk Line, Ltd.*,
    357 F. Supp. 2d 924 (E.D. Va. 2005) ................................................................6

STATUTES

28 U.S.C.
    § 1391(b).............................................................................................6, 7
    § 1404(a) ...................................................................................1, 5, 15, 17

35 U.S.C. § 102(b) ..............................................................................................................14

**DEFENDANTS' JOINT MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)**

Defendants Facebook, Inc. ("Facebook"), YouTube, LLC ("YouTube"), LinkedIn

Corporation ("LinkedIn"), and Photobucket.com, Inc. ("Photobucket") by and through their

undersigned counsel, respectfully and jointly move this Court to transfer this case to the United

States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

## I.     SUMMARY OF ARGUMENT

The center of gravity of this patent infringement action lies not in the Eastern District of

Virginia, but rather in the Northern District of California.  Defendants Facebook, YouTube, and

LinkedIn are all headquartered in the Northern District of California, and the vast majority of

their potential witnesses and potentially relevant documents are located in that district.

Furthermore, the bulk of the likely non-party witnesses—the named inventors and one previous

owner of the patents-in-suit—reside in the Northern District of California.  In stark contrast,

Plaintiff Pragmatus AV, LLC ("Pragmatus") has little connection to this District—having

registered to do business in the Commonwealth of Virginia less than six months before filing suit

here.  Furthermore, the alleged acts of infringement in this District bear no particular relation to

this District and could have occurred in any district in the nation.  As will be explained in detail

below, the Court should transfer this action to the Northern District of California pursuant to

Section 1404(a) because that district is "clearly more convenient" than the Eastern District of

Virginia for litigation of this dispute.

## II.    FACTUAL BACKGROUND

Pragmatus, a non-practicing entity, filed the Complaint in this action against Defendants

on November 15, 2010, alleging direct and indirect infringement of U.S. Patent Nos. 7,730,132

("the '132 patent"), 7,822,813 ("the '813 patent"), and 7,831,663 ("the '663 patent")

(collectively, "patents-in-suit").  Pragmatus alleges that Defendants infringe one or more claims of these patents by "making, using, offering for sale, and/or selling the systems and/or practicing the methods" of these patents or by inducing end-users to infringe or contributing to end-users' infringement of the patents-in-suit.  *See, e.g.*, Compl. ¶¶ 16-17, 28-29, 40-41, 48-49.

### A.  The Defendants Have No Connection to this District

Facebook is a Delaware corporation headquartered in Palo Alto, California, which is located in the Northern District of California.  Farren Decl. ¶ 2 (hereinafter referred to as "Facebook Decl.").  Insofar as the Complaint identifies any Facebook accused systems or services (Compl. ¶ 25)[1], the vast majority of Facebook employees with knowledge of the development, implementation, and operation of such systems or services are located at Facebook's Palo Alto headquarters.  Facebook Decl. ¶ 3.  Likewise, the vast majority of likely sources of proof, including documentation for all of Facebook's service offerings, are located at Facebook's headquarters.  *Id.*  Facebook does not have any offices or technical employees located in Virginia.  *Id.* ¶ 4.

YouTube is a Delaware corporation headquartered in San Bruno, California, which is located in the Northern District of California.  Wagner Decl. ¶ 2 (hereinafter referred to as "YouTube Decl.").  YouTube is a wholly owned subsidiary of Google, a Delaware corporation headquartered in Mountain View, California.  *Id.*, ¶ 3.  Insofar as the Complaint identifies any YouTube accused systems or services (Compl. ¶ 29) [2], the YouTube employees with knowledge of the development, implementation, and operation of such systems or services are primarily

---

[1]Pragmatus vaguely alleges that Facebook's "social network services" infringe the patents-in-suit. Facebook has moved to dismiss Pragmatus's vague allegations of direct infringement, or in the alternative, for a more definite statement.

[2]Pragmatus vaguely alleges that YouTube's "systems and services" infringe the patents-in-suit. YouTube has moved to dismiss Pragmatus's vague allegations of direct infringement, or in the alternative, for a more definite statement.

located in YouTube's San Bruno headquarters or in Google's Mountain View headquarters. YouTube Decl. ¶ 9.  Likewise, the likely sources of proof, including documentation for the accused systems and services, are located at YouTube's San Bruno headquarters or at Google's Mountain View headquarters.  *Id.* ¶ 6.  Of Google's roughly 24,000 employees, approximately 50 work at a Google office in Reston, Virginia, but none of the employees in Reston are responsible for research, design, and development of YouTube.  *Id.* ¶ 10.

LinkedIn is a Delaware corporation headquartered in Mountain View, California, which is located in the Northern District of California.  Moon Decl. ¶ 2 (hereinafter referred to as "LinkedIn Decl.").  Insofar as the Complaint identifies any LinkedIn accused systems or services (Compl. ¶ 41) [3], the vast majority of LinkedIn employees with knowledge of the development, implementation, and operation of such systems or services are all located at LinkedIn's Mountain View headquarters.  LinkedIn Decl. Decl. ¶ 3.  Likewise, the overwhelming majority of likely sources of proof, including documentation for the accused services, are located at LinkedIn's headquarters.  *Id.* ¶ 4.  LinkedIn has one technical employee who works part of the time in Virginia and part of the time out of LinkedIn's Mountain View headquarters.  *Id.* ¶ 6.  LinkedIn does not maintain an office in Virginia.  *Id.*

Photobucket is a Washington corporation headquartered in Denver, Colorado.  Munro Decl. ¶ 2 (hereinafter referred to as "Photobucket Decl.").  Photobucket also maintains an office located in San Francisco, California.  *Id.* ¶ 3.  Insofar as the Complaint identifies any Photobucket accused systems or services (Compl. ¶ 48), the Photobucket employees with knowledge of the development, implementation, and operation of such systems or services are

---

[3]Pragmatus vaguely alleges that LinkedIn's "social network services" infringe the patents-in-suit. LinkedIn has moved to dismiss Pragmatus's vague allegations of direct infringement, or in the alternative, for a more definite statement.

located either at Photobucket's San Francisco office or its office in Colorado.  Photobucket Decl.

¶ 4.  Likewise, the likely sources of proof, including documentation for the accused services, are

located at the San Francisco or Denver offices.  *Id.* ¶¶ 4-5.  Photobucket does not have any

offices or technical employees located in Virginia.  *Id.* ¶¶ 6-8.

### B.  The Plaintiff Lacks a Significant Connection to this District

Pragmatus is a recently created limited liability company located in Alexandria, Virginia.

Ex. 1.  Pragmatus filed its business registration with the Commonwealth of Virginia on June 9,

2010.  *Id.*  Although Pragmatus alleges in its Complaint that its principal place of business is in

Alexandria, Virginia, it is unknown whether Pragmatus conducts any actual business in this

District beyond filing lawsuits in this forum.  Ex. 2.  The inventions of the patents-in-suit now

owned by Pragmatus were previously owned by different business entities located in the

Northern District of California.  For example, the original patent application from which each of

the patents-in-suit is descended, was assigned to Vicor Inc., which was located in Palo Alto,

California.  Ex. 3.  Similarly, a later assignee of the patents, Avistar Communications

Corporation ("Avistar"), is located in San Mateo, California.  *Id.*  Significantly, at least two of

the named inventors of the patents-in-suit are officers of Avistar:  Gerald Burnett is chairman of

Avistar; Chris Lauwers is its Chief Technology Officer.  *See*

http://www.avistar.com/company/Video-Conferencing-Service.html (last visited on Jan. 7,

2011); http://www.avistar.com/company/Teleconferencing-System-92.html (last visited on Jan.

7, 2011).  In January 2010, Avistar assigned the patents-in-suit and other patents to Intellectual

Ventures, a well known aggregator of patents, for eleven million dollars.  Ex. 2.  Pragmatus

subsequently acquired the patents-in-suit from Intellectual Ventures on June 16, 2010—only one

week after Pragmatus was formed and filed its business registration in the Commonwealth.  Ex. 3; Ex. 1.[4]

### C.  The Large Majority of Potential Non-Party Witnesses Reside in the Northern District of California, and None Reside in Virginia

The large majority of potential non-party witnesses reside in the Northern District of California.  Three of the five named inventors reside in the Northern District of California:  Chris Lauwers (Mountain View, CA); Keith A. Lantz (Los Altos, CA); and Gerald J. Burnett (Atherton, CA). [5] Exs. 4-6.  The other two inventors—Lester Ludwig and Emmett Burns—reside in Texas and Montana, respectively.  Exs. 7-8.  Furthermore, as explained above, two of the previous owners of the patents–in-suit—Vicor and Avistar —have a significant connection to the Northern District of California:  Vicor was located in Palo Alto, California; Avistar is currently located in San Mateo, California.  Indeed, Avistar attempted to license related patents in the family of the patents-in-suit and participated in litigation involving such patents in the Northern District of California.  Ex. 9 ¶ 50.

In addition, the attorney who prosecuted the patents-in-suit, Craig P. Opperman of Reed Smith LLP, works in that law firm's Palo Alto, California office.  *See* http://www.reedsmith.com/our_people.cfm?cit_id= 21994&widCall1=customWidgets.content_view_1 (last visited on Jan. 7, 2011).  Significantly, none of the likely non-party witnesses in this action are located in Virginia.

---

[4]The terms of the assignment of the patents-in-suit to Pragmatus are not publicly available.
[5]The same five individuals are listed as the named inventors of each of the patents-in-suit.

III.    **ARGUMENT**

    A.  **Legal Standard**

       A district court may transfer a civil action to any other district where the action might originally have been brought if doing so would serve the convenience of the parties and witnesses and the interests of justice.  28 U.S.C. § 1404(a).  A court must perform a two-step analysis to determine if a transfer is appropriate under Section 1404(a):  first, the court must determine whether the action could originally have been brought in the proposed transferee forum; and second, the court must determine whether transferring the case would serve the convenience of the parties and witnesses and the interests of justice.  *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 689 (E.D. Va. 2007).

       To determine whether transferring a case would serve the goals of convenience and justice, this Court considers six factors:  (1) the convenience of the parties and witnesses; (2) the cost of obtaining the attendance of witnesses; (3) the availability of compulsory process; (4) the interest in having local controversies decided at home; (5) in diversity cases, the court's familiarity with the applicable law; and (6) the interest of justice.  *U.S. Ship Mgmt. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 936 (E.D. Va. 2005).  Although the plaintiff's choice of forum is generally a significant consideration in the transfer analysis, it is by no means dispositive.  *Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 (E.D. Va. 1988).  Indeed, the more insubstantial the connection between a plaintiff's choice of forum and the underlying cause of action, the less weight a Court will afford to that choice.  *Id.* at 1256; *see also In re Microsoft Corp.*, Misc. No. 944, slip op. at 7-8 (Fed. Cir. Jan. 5, 2011) (granting mandamus and transferring where plaintiff incorporated in Texas shortly before filing suit in the Eastern District of Texas) (attached as Ex. 14).

**B.  This Action Could Originally Have Been Brought in the Northern District of California**

Pragmatus could have brought suit against the Defendants in the Northern District of California.  A civil action not founded on diversity jurisdiction may be brought in:  (1) any judicial district where any defendant resides, if all defendants reside in the same state; (2) any judicial district in which a substantial part of the events giving rise to suit occurred; or (3) if there is no proper forum under either (1) or (2), then any judicial district in which any defendant may be found.  28 U.S.C. § 1391(b).  Defendants Facebook, YouTube, and LinkedIn all reside in the Northern District of California.  Thus, the Northern District of California would be an appropriate venue for this suit under the first prong of Section 1391(b).  Although Defendant Photobucket has its principal place of business in the state of Colorado, it maintains an office located in San Francisco, California—which is in the Northern District of California—and does business within that district.  Photobucket Decl. ¶¶ 2-3.  Photobucket "may be found" in the Northern District of California, and venue for this suit would therefore be appropriate under the third prong of Section 1391(b).  Therefore, the Northern District of California is a venue in which this action could originally have been brought against all Defendants.  In any event, all infringing activities alleged by Plaintiff to have occurred in the Eastern District of Virginia, if they occurred at all, occurred equally in the Northern District of California.

**C.  The Convenience Factors and Interests of Justice Overwhelmingly Favor Transfer**

Once the Court has determined that this action could have been brought in the Northern District of California, it must consider whether transfer would serve the convenience of the parties and non-party witnesses and the interests of justice.  In analyzing the convenience of the

parties and witnesses, this Court "considers factors such as the 'ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process.'" *Lycos*, 499 F. Supp. 2d at 693 (citing *Samsung Elecs. Co. v. Rambus, Inc.,* 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005)).  These factors demonstrate that the Northern District of California is clearly the more convenient venue in which to litigate the parties' dispute.

## 1.   The Convenience of the Parties and Access to Sources of Proof

The factors of convenience of the parties and access to sources of proof overwhelmingly favor transfer to the Northern District of California.

Defendants Facebook, YouTube, and LinkedIn are all headquartered in the Northern District of California.  Significantly, the vast majority of those Defendants' employees with knowledge of the development, implementation, and operation of the systems and services accused of infringement are located in their headquarters within the Northern District of California.  Facebook Decl. ¶ 3; YouTube Decl. ¶ 9; LinkedIn Decl. ¶ 3.[6]  Moreover, the vast majority of likely sources of proof, including documentation for those systems and services, are also located in their headquarters.  Facebook Decl. ¶ 3; YouTube Decl. ¶ 6; LinkedIn Decl. ¶ 4.; *see In re T.S. Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (finding that the convenience of access to sources of proof is not diminished by the electronic nature of such evidence).  Although Defendant Photobucket is headquartered in Denver, Colorado, the Photobucket employees with knowledge of the development, implementation, and operation of the systems and services accused of infringement and likely sources of proof for those systems and services are located either at its office within the Northern District of California or its Denver, Colorado office.  Photobucket Decl. ¶ 4.  The location of potentially relevant

---

[6]LinkedIn has one technical employee who works part of the time in Virginia and part of the time out of LinkedIn's Mountain View headquarters.  LinkedIn Decl. ¶ 6.

documentation is particularly important here because "[i]n patent infringement cases, the bulk of relevant evidence usually comes from the accused infringer."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Therefore, the Northern District of California would indisputably be a more convenient forum for all of the Defendants to litigate this case.

Pragmatus was formed under the laws of Virginia and registered to do business in the Commonwealth on June 9, 2010—only one week before it purchased the patents-in-suit.  Ex. 1; Ex. 3.  Pragmatus has no apparent connection to this District, and though the location of its purported principal place of business is in Alexandria, Virginia, it is unknown whether Pragmatus possesses any documents regarding the patents-in-suit or has any employees who work in Virginia.  Given that Pragmatus became the assignee of the patents-in-suit six months ago and played little if any apparent role in their prosecution, there is no clear convenience to Pragmatus in litigating in this District.  Conversely, there would be no apparent inconvenience to Pragmatus if it were required to litigate its claims in the Northern District of California.

Significantly, the Federal Circuit recently held that courts need not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient."*In re Microsoft Corp.*, Misc. No. 944, slip op. at 5 (Fed. Cir. Jan. 5, 2011).  In *In re Microsoft*, the plaintiff argued that its choice of forum—the Eastern District of Texas—should be upheld because it maintained an office in that district.  *Id.* at 5.  But the Federal Circuit rejected that argument, explaining that the plaintiff's incorporation in Texas shortly before filing suit made clear that plaintiff's decision to open a Texas office was "recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue."  *Id.* at 6-7.  Therefore, the Federal Circuit accorded "little consideration" to plaintiff's corporate domicile in its convenience analysis and concluded that the Western District

of Washington was the more convenient forum because accused infringer Microsoft's potential

witnesses and relevant documents were located at its headquarters in that district.  *Id.* at 3, 7

(internal quotation omitted)  (granting petition for mandamus and ordering transfer to Western

District of Washington).

Here, the Court should similarly accord little consideration to Pragmatus's corporate

domicile.  Pragmatus was formed under the laws of Virginia shortly before purchasing the

patents-in-suit and filing this suit.  Thus, there can be little doubt that Pragmatus's decision to

locate its office in Alexandria, Virginia was made in anticipation of this litigation to manipulate

venue.  By contrast, as explained above, the Defendants have significant connections to the

Northern District of California, and the vast majority of potential witnesses and relevant

documents are located in Defendants' offices in that district.  Therefore, the factors of

convenience of the parties and witnesses and access to sources of proof overwhelmingly favor

the transfer of this case to the Northern District of California.  *See In re Genentech*, 566 F.3d at

1345 (finding that transfer was favored where a substantial number, though not all, of the

material witnesses resided in the transferee district).

### 2.   The Availability of Compulsory Process and the Convenience of Non-Party Witnesses

The availability of compulsory process also overwhelmingly favors transfer of this case

to the Northern District of California.  If this case is transferred to the Northern District of

California, three of the five inventors and the attorney who prosecuted the patents-in-suit would

be subject to compulsory process.  Chris Lauwers (Mountain View, CA), Keith A. Lantz (Los

Altos, CA), and Gerald J. Burnett (Atherton, CA) all reside in the Northern District of California.

Exs. 4-6.  Furthermore, Craig Opperman of Reed Smith LLP, the attorney who prosecuted the

patents-in-suit, is based in Palo Alto, California, which is also within the Northern District of

California. *See supra* at 5.  The testimony of the inventors and prosecuting attorney will be

relevant to a number of critical issues in this litigation, including at least conception and

reduction to practice of the inventions embodied in the patents-in-suit, the prosecution of the

patents-in-suit, the scope of the claims, invalidity, and inequitable conduct.  Securing these

critical witnesses' attendance at trial—instead of viewing excerpts of videotaped depositions—

would undoubtedly better serve the finder of fact on these issues.

Furthermore, if the case was transferred to the Northern District of California, Avistar—a

previous owner of the patents-in-suit—also would be subject to compulsory process.  Avistar is

located in San Mateo, California. *See supra* at 4.  Avistar's involvement with the patents-in-suit

suggests that it will have knowledge regarding at least:  (1) the development of the inventions

embodied in the patents-in-suit; (2) the prosecution of those patents; (3) secondary factors of

nonobviousness relevant to an invalidity analysis; and (4) reasonable royalty and damages issues.

Indeed, two of the named inventors are current officers of Avistar:  Gerald Burnett is chairman

of Avistar and Chris Lauwers is its Chief Technology Officer.  *Id.*  Avistar previously licensed

and litigated related patents in the family of the patents-in-suit.  Ex. 9 ¶ 50.  In addition, Avistar's

sale of the patents to Intellectual Ventures provides Avistar with important knowledge regarding

the market value of the patents.  Therefore, Avistar will likely be a significant third party in this

litigation.

Because these non-party witnesses are located within the Northern District of California,

it is self-evident that transfer of this case to that venue would also significantly increase the

convenience to all of these witnesses.  Accordingly, the factors of the availability of compulsory

process and the convenience of non-party witnesses overwhelmingly favor transfer of this case to

the Northern District of California.  *See In re Genentech,* 566 F.3d at 1345 (finding transferee

venue's compulsory subpoena power over witnesses favors transfer).

### 3.   The Cost of Obtaining the Attendance of Witnesses

As explained above, Defendants Facebook's, YouTube's, and LinkedIn's potential

witnesses work in the Northern District of California.  Furthermore, each of those Defendants'

trial counsel is also located in the Northern District of California.  Thus, if this case went to trial

in the Northern District of California, Defendants Facebook, YouTube, and LinkedIn would

incur virtually no costs for overnight travel for either its employees or counsel.  However, if

Facebook, YouTube, and LinkedIn are required to litigate this dispute here, each would incur

significant airfare, lodging, and meal expenses for its employees and counsel traveling from the

West Coast.  In addition, the burden and cost on Photobucket to present witnesses at trial would

be significantly reduced by litigating this case in the Northern District of California because its

potential witnesses work in either its office within that district or its Colorado office.

Pragmatus will likely have few potential party witnesses in this case.  Pragmatus only

recently acquired the patents-in-suit.  As a result, its employees will likely have no personal

knowledge regarding the patents-in-suit prior to June 2010.  In any event, it is unknown whether

any potential Pragmatus witnesses actually work or reside within this District.

Proceeding in the Eastern District of Virginia would also impose additional unnecessary

cost to most of the relevant non-party witnesses.  As explained previously, likely material

witnesses from Avistar, three of the five inventors, and the attorney who prosecuted the patents-

in-suit reside in the Northern District of California.  To the extent that these witnesses were to

testify at trial, transfer of this case to the Northern District of California would eliminate the

travel, lodging, and meal costs incurred by these witnesses as well.

On balance, the cost of obtaining attendance of witnesses strongly favors transfer to the Northern District of California. *See T.S. Tech*, 551 F.3d at 1320 (recognizing the significant expense and inconvenience of long-distance travel for material witnesses).

### 4. The Interest in Having Local Controversies Decided at Home

This factor strongly favors transfer to the Northern District of California. Facebook, YouTube, and LinkedIn are all headquartered in the Northern District of California. Each of those Defendants has been doing business there for several years: Facebook (more than 6 years); YouTube (more than 5 years); and LinkedIn (more than 7 years). Facebook Decl. ¶ 2; YouTube Decl. ¶ 2; LinkedIn Decl. ¶ 2. Although Photobucket is not headquartered in the Northern District of California, it does maintain a material connection to that forum through its San Francisco office. Photobucket Decl. ¶ 3. Furthermore, Avistar and three of the five named inventors are all located in the Northern District of California. By contrast, Pragmatus has little connection with this forum, having registered to do business in the Commonwealth of Virginia little more than six months ago, in June 2010. Ex. 1. Therefore, Pragmatus's patent infringement suit against Defendants is a controversy centered in the Northern District of California, and should be litigated there.

### 5. The Court's Familiarity with the Applicable Law

This factor is neutral. Patent law is a federal issue and is properly before any of the federal district courts. In addition, this District and the Northern District of California are both experienced patent litigation fora.

### 6. The Interests of Justice

The interests of justice favor transfer to the Northern District of California based upon that court's familiarity with related patents within the family of the patents-in-suit. Collaboration

Properties, Inc. ("Collaboration Properties")—another previous owner of the patents-in-suit—litigated two patent infringement suits involving related patents in the Northern District of California.  *See, e.g., Collaboration Properties, Inc. v. Tandberg ASA*, Case No. 05-cv-01940-MHP (N.D. Cal. filed May 11, 2005) ("Tandberg litigation") (stipulated dismissal granted on February 22, 2007 (Dkt. No. 350)) (docket attached as Ex. 10); *Collaboration Properties, Inc. v. Polycom, Inc.*, Case No. 02-cv-04591-MMC (N.D. Cal. filed Sept. 23, 2002) ("Polycom litigation") (dismissed pursuant to parties' settlement on November 15, 2004 (Dkt. No. 508)) (docket attached as Ex. 11).  In both cases, the accused infringers asserted the affirmative defense of inequitable conduct in connection with the prosecution of Patent Application No. 08/131,523[7]—the parent application of the patents-in-suit here.  Ex. 12 at 5-6; Ex. 13 at 7; Ex. 9 ¶¶ 41-43.  The accused infringers alleged that Vicor—the original owner of the parent application of the family of patents-in-suit—failed to disclose to the PTO that it had sold a system that embodied the inventions claimed in the parent application more than a year before it filed that application.  *Id.*[8]  The accused infringers claimed that such inequitable conduct in connection with the parent application infected the downstream patents.  Significantly, in the Tandberg litigation, Tandberg took discovery on this on-sale bar inequitable conduct theory, and successfully moved for leave to amend its answer to add the theory.  Ex. 13 at 7.  The Tandberg litigation subsequently settled less than one month after the Northern District of California granted Tandberg leave to amend.  Ex. 10, Dkt. No. 350.

The Northern District of California's familiarity with the family of the patents-in-suit counsels in favor of transfer.  In particular, the Northern District of California has considered the

---

[7]Patent Application No. 08/131,523 eventually issued as U.S. Patent No. 5,689,641.

[8]Under 35 U.S.C. § 102(b), at least the parent application would be invalid if Vicor sold or offered for sale the subject inventions more than one year before the October 1, 1993 filing date of the parent application.

same invalidity and inequitable conduct issues that will likely be relevant to this case.  Ex. 13 at

7; Ex. 11, Dkt. Nos. 252, 313, 405.  The Northern District of California is also familiar with the

prosecution history of the family of the patents-in-suit and the testimony of at least one of the

named inventors—Lester Ludwig.  Ex. 13 at 1-2.

 In addition to its familiarity with the family of the patents-in-suit, the Northern District of

California has local patent rules that are formulated to aid in the timely disposition of patent

cases. The local patent rules provide for the early disclosure of infringement and invalidity

contentions, and claim construction positions.  These rules ensure that patent litigations proceed

in an efficient  manner with adequate notice of the parties' positions on patent-litigation-specific

issues.

 Accordingly, the interests of justice favor transfer to the Northern District of California.

 \*                              \*                              \*

 In short, the convenience factors and interests of justice overwhelmingly favor transfer to

the Northern District of California.  Therefore, the Court should transfer this case to the Northern

District of California pursuant to Section 1404(a).

### D.  Plaintiff's Choice of Forum Is Not Entitled To Substantial Weight

 Pragmatus's choice of forum in this litigation is entitled to little if any weight, as there is

little if any connection between its patent infringement claims and the Eastern District of

Virginia.  Although deference is often given to a plaintiff's choice of forum, the fact that a

plaintiff filed suit in its home district does not preclude transfer to a more convenient forum.  *Bd.*

*of Trustees*, 702 F. Supp. at 1257.  Indeed, this Court has explained that, "the weight given to

plaintiff's choice of venue varies with the significance of the contacts between the venue chosen

by plaintiff and the underlying cause of action.  For obvious reasons, the plaintiff's choice is

entitled to less weight where there is little to connect the chosen forum with the cause of action."
*Id*. at 1256.

As this Court has recognized, there is a general rule in patent litigations that "the preferred forum is that which is the center of the accused activity.... 'The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.'" *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (citation omitted).Courts applying this center of gravity analysis have explained that "[a]ppropriate considerations include the location of a product's development, testing, research and production [and] the place where marketing and sales decisions were made, rather than where limited sales activity has occurred." *Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (citations omitted).  This Court has regarded the center of gravity analysis as a "shorthand reference to the convenience of witnesses and access to evidence components" of the transfer analysis. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 638 (E.D. Va. 2003).

Based upon the analysis of the convenience factors above, it is clear that the Northern District of California is not only the more convenient forum, it is the center of gravity of this patent litigation.  The Eastern District of Virginia has little to no connection with the cause of action alleged by Pragmatus in this litigation.  Although it is possible that Virginia residents have utilized Defendants' accused systems and services from within this District, the same could likely be said for any district in the country because those systems and services are equally accessible from anywhere in the country through the Internet.  This Court has consistently granted very little weight to such attenuated contacts.  *See Lycos*, 499 F. Supp. 2d at 692-93 (transferring case to District of Massachusetts despite allegedly infringing sales to Virginia

residents because "defendants likely have this same contact with every other state in this nation").

Pragmatus should not be permitted to drag this litigation away from the Northern District of California—the location where the predominant majority of activity relating to both the patents-in-suit and the accused infringing services has heretofore occurred—simply because it chose to secure office space and file registration papers in Virginia just before buying the patents-in-suit and filing this suit.  Such behavior smacks of forum shopping.  Virtually all of the likely evidence and witnesses relevant to this case are found in the Northern District of California, but virtually none are found in the Eastern District of Virginia.  Accordingly, Pragmatus's choice of forum should be entitled to little, if any, weight.

Therefore, the Northern District of California is plainly the "preferred forum," and this Court should accordingly transfer this case to that district.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants Facebook, YouTube, LinkedIn, and Photobucket respectfully request that this case be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: January 7, 2011                          Respectfully submitted,


                                                <u>/s/  Scott A. Cole</u>
                                                Justin P.D. Wilcox (Va. Bar No. 66067)
                                                jwilcox@cooley.com
                                                Scott A. Cole (Va. Bar No. 74771)
                                                scole@cooley.com
                                                Cooley LLP
                                                One Freedom Square
                                                11951 Freedom Drive
                                                Reston, VA 20190-5656
                                                Telephone:  (703) 456-8000
                                                Facsimile:   (703) 456-8100

*OF COUNSEL*
Heidi Keefe (*pro hac vice* pending)
hkeefe@cooley.com
Cooley LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  (650) 843-5000
Facsimile:   (650) 857-0663

Attorneys for Defendant FACEBOOK, INC.

*/s/ Veronica S. Ascarrunz  (with permission)*
Veronica S. Ascarrunz (Va. Bar No. 67913)
vascarrunz@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1700 K Street, NW, Fifth Floor
Washington, D.C.  20006-3817
Telephone: (202) 973-8800
Facsimile:  (202) 973-8899

Attorneys for YOUTUBE, LLC

*/s/  David E. Finkelson  (with permission)*
David E. Finkelson (Va. Bar No. 44059)
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Telephone: (804) 775-1157
Facsimile:  (804) 225-5377
dfinkelson@mcguirewoods.com

*OF COUNSEL*
Daralyn J. Durie (CA Bar No. 169825)
Clement S. Roberts (CA. Bar No. 209203)
Durie Tangri, LLP
217 Leidesdorff St
San Francisco, CA, 94111
T: 415.362.6666
F: 415.236.6300
ddurie@durietangri.com
croberts@durietangri.com

Attorneys for LINKEDIN CORPORATION

*/s/ David M. Foster  (with permission)*
David M. Foster  (Va. Bar No. 20799)
Kimberly S. Walker (Va. Bar No. 47921)
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue N.W.
Washington, D.C.  20004-2623
T:  202 662-4517
F:  202 662-4643
dfoster@fulbright.com
kwalker@fulbright.com

**OF COUNSEL**
Dan D. Davison (TX Bar No. 05590900)
Miriam Quinn (TX Bar No. 24037313)
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Ave, Suite 2800
Dallas, Texas 75201
T: 214.855.8000
F: 214.855.8200
ddavison@fulbright.com
mquinn@fulbright.com

Richard S. Zembek (TX Bar No. 00797726)
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010
T: 713.651.5151
F: 713.651.5246
rzembek@fulbright.com

Attorneys for PHOTOBUCKET.COM, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 7, 2011.  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/  Scott A. Cole*
Scott A. Cole (Va. Bar No. 74771)